UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WHEATLAND CONTRACTORS, INC., <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL UNION 150, AFL-CIO, <br><br> Defendant. | No. 06 C 0683 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

This case involves a dispute between Wheatland Contractors, Inc. ("Wheatland"), an Illinois company that specializes in excavation, earthmoving, and trenching, and the International Union of Operating Engineers Local 150 ("Local 150"), a labor union that represents employees in Illinois, Iowa and Indiana. Presently before me are cross-motions for summary judgment.

I.    FACTS

In January, 2003, the parties signed a memorandum of agreement ("Agreement"), adopting the terms and conditions of the Excavators, Inc., Illinois Heavy and Highway and Underground Agreement. The Agreement contains, among other things, a dispute resolution mechanism whereby irreconcilable grievances are to be submitted to, and resolved by, a Joint Grievance Committee ("JGC"). The Agreement calls for the JGC to consist of an equal number of members representing employers and the union.

In the summer of 2004, Wheatland began work on a water main project in Oswego, IL. The dispute first arose in November, 2004, when Local 150 business representative Kal Lester visited the construction site and saw that Wheatland was using two generators to provide power for six to seven electric submersible pumps. He informed Wheatland officials that he considered this to be a violation of Article XI of the Agreement. Accordingly, on December 22, 2004, Local 150 filed a grievance with the JGC.

On November 10, 2005, the JGC—composed of two management and two union representatives—convened a hearing concerning the dispute. The parties were essentially in agreement as to the underlying facts, the discord concerned competing interpretations of the Agreement. In particular, they disagreed over the meaning of Article XI and which subsection thereunder should apply.

After the two sides made their respective presentations, the JGC deliberated and concluded unanimously that Wheatland violated the Agreement. It found that Wheatland owed backpay in the amount of $24,767.83. The hearing was not transcribed, and the only written decision was a November 11, 2005, letter to a Wheatland official. The letter contained no analysis or explanation for the decision. It merely said, "Based on the testimony heard, the Committee by majority decision determined as follows: 1) The Employer shall pay $24,767.83 to the Local 150 Assistance Fund."

Local 150 did submit an affidavit from a member of the JGC, Steven M. Cisco. Mr. Cisco stated:

> It is the common understanding by Local 150 and employers working under the Agreement, that if any Employer is using down power, or electricity through Commonwealth Edison ("COMED") or another electric company, it may use as many as eight submersible pumps without hiring an operating engineer. However, if an employer is using generators to power those pumps, Section 3 does not apply. Instead, Section 2, Small Category Equipment Assignment, applies, and an employer may not use more than three pumps (or another combination of small equipment) without hiring an operating engineer.

Wheatland, believing the JGC's decision to be contrary to the plain language of the Agreement, filed this action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1998).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986) (stating that summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element

2

essential to that party's case, and on which that party will bear the burden of proof at trial"). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

B. *Section 301 of the Labor Management Relations Act*

The Supreme Court has long held that national policy favors the resolution of labor disputes through arbitration. *See United Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). One of the outgrowths of this dictate is that judicial review of labor arbitration awards is extremely limited. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

The *Enterprise Wheel* Court explained that "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Enterprise Wheel*, 363 U.S. at 596. Accordingly, courts are not authorized to reconsider the merits of an arbitration award. *Misco*, 484 U.S. at 36; *Enterprise Wheel & Car*, 363 U.S. at 596.

The *Enterprise Wheel* Court went on to describe the proper function of an arbitrator and a reviewing court:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

363 U.S. at 597; *see also United Steelworkers*, 363 U.S. at 569 (explaining that when the judiciary weighs the merits of the grievance or considers whether there is equity in a particular claim "it usurps a function which . . . is entrusted to the arbitration tribunal"); *Eastern Associated Coal Corp. v. Mine*

3

*Workers*, 531 U.S. 57, 62 (2000) (noting that if an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision") (internal quotations omitted). It is settled law, therefore, that an arbitration award will be enforced "so long as it 'draws its essence from the collective bargaining agreement' even if the court thinks the arbitrator misconstrued the contract." *Ethyl Corp. v. United Steelworkers of America, AFL-CIO-CLC*, 768 F.2d 180, 184 (7th Cir. 1985).

### C. Interpreting Ambiguous Awards

An arbitrator's decision need not be free from ambiguity to be upheld, nor need the arbitrator even state reasons for his or her decision. *Enterprise Wheel*, 363 U.S. at 598. "It is well-settled that the district court generally may not interpret an ambiguous arbitration award." *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 279 (7th Cir. 1992) (internal citations omitted); *see also United Steelworkers v. Danly Mach. Corp.*, 852 F.2d 1024, 1027 (7th Cir. 1988). Rather, "[i]f an award is unclear, it should be sent back to the arbitrator for clarification." *Flender*, 953 F.2d at 279-80 (internal citations omitted); *see also Young Radiator Co. v. International Union, U.A.W.*, 734 F.2d 321, 326 n.5 (7th Cir. 1984) ("[W]here the basis for an arbitrator's decision is unclear, but the arbitrator's opinion suggests that the decision does not draw its essence from the collective bargaining agreement, remand is appropriate to have the arbitrator clarify the basis for his or her decision.") (*citing Randall v. Lodge No. 1076, International Association of Machinists and Aerospace Workers, AFL-CIO*, 648 F.2d 462 (7th Cir. 1981)).

However, "[w]hen possible . . . a court should avoid remanding a decision to the arbitrator because of the interest in prompt and final arbitration." *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 278 (7th Cir.1989) (citations omitted). "Thus, a court is permitted to interpret and enforce an ambiguous award if the ambiguity can be resolved from the record." *Flender*, 953 F.2d at 280 (citations omitted); *see also Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 188 (7th Cir.1985).

D. This Case

The JGC's decision in this case is by no means the model of clarity. As noted, the JGC offered no written analysis or explanation of its decision whatsoever. Nevertheless, as the *Flender* court noted, "a court is permitted to interpret and enforce an ambiguous award if the ambiguity can be resolved from the record." *Flender*, 953 F.2d at 280 (citations omitted). The record in this case contains, among other things, Steven Cisco's affidavit. Cisco, one of the four members of the JGC, provides some insight into the JGC's rationale. He stated that he interpreted the Agreement to require an employer to hire an operating engineer if that employer was operating in excess of three submersible pumps if those pumps were powered by generators. Cisco reiterated that this was the basis for the JGC's decision when he stated "Local 150 business representative Kal Lester presented the grievance and recited the facts. Lester states his understanding of Article XI, with which I agreed . . ."

Whether I would reach this conclusion if I endeavored to interpret the Agreement *de novo*, and indeed whether I even find this conclusion to be at all sound, is besides the point. As the Seventh Circuit explains:

> the question for decision by a federal court asked to set aside an arbitration award . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.

*Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1194-95 (7th Cir. 1987). Since I find that the JGC based its ruling on Article XI, Section 2 of the Agreement, I decline to disturb it. Accordingly, Wheatland's Motion for Summary Judgment is denied and Local 150's Cross-Motion for Summary Judgment is granted.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: February 16, 2007

5